IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANTHONY TREVON KORNEGAY, #A1004943,<br><br>        Plaintiff,<br><br>  vs.<br><br>STG. SRGT. CHRISTOPHER GILBERT, *et al.*,<br><br>        Defendants. | CIVIL NO. 26-00058 DKW-RT<br><br>ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND |

Before the Court is pro se Plaintiff Anthony Kornegay's Prisoner Civil Rights Complaint brought pursuant to 42 U.S.C. § 1983.[1] ECF No. 1. In the Complaint, Kornegay alleges that three prison officials at Oahu Community Correctional Center (OCCC) violated his rights by threatening his safety (Count I), using excessive force (Count II), and denying him adequate medical care (Count III).[2] *Id.* at PageID.5–7. After conducting the required screening pursuant to

---

[1] Kornegay is currently incarcerated at Oahu Community Correctional Center. *See* ECF No. 1 at PageID.1; VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A1004943"; and select "Search") (last visited Mar. 5, 2026).

[2] Kornegay names as defendants: (1) Security Threat Group (STG) Sergeant (Sgt.) Christopher Gilbert; (2) Sgt. J. Dardeen; and (3) Registered Nurse Matthew Hubbard. ECF No. 1 at PageID.1–2. Kornegay names all three defendants in both their individual and official capacities. *Id.*

28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court DISMISSES the Complaint with partial leave to amend. If Kornegay wants to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **April 10, 2026.** Alternatively, instead of filing an amended pleading, Kornegay may inform the Court in writing on or before **April 10, 2026** that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).[3]

### I. BACKGROUND[4]

At some unspecified time, Kornegay informed Sgt. Gilbert of "safety concerns" based on Kornegay's "gang affiliation." ECF No. 1 at PageID.5. After Sgt. Gilbert denied Kornegay's request for protective custody, Kornegay was housed in a general population housing unit at OCCC. *Id.* Apparently beginning in 2022 until a date unknown, Kornegay was the victim of "numerous attacks," during which he sustained "life[-]altering injuries." *Id.*

In September 2025, Sgt. Dardeen "knock[ed]" a wooden box into Kornegay's right side. *Id.* at PageID.6. Kornegay suffered a broken hand and foot, and injuries to his left knee and lower back. *Id.* Apparently during the same

---

[3] In general, 28 U.S.C. § 1915(g) prohibits a prisoner from filing a civil action in forma pauperis if he or she has on three or more occasions brought an action in federal court that was dismissed as frivolous or malicious, or for failing to state a claim upon which relief may be granted.
[4] The Complaint alleges the following facts, which the Court accepts as true for the purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).

incident, Sgt. Dardeen also wrapped his arms around Kornegay's chest, lifted him up, and swung him from side to side. *Id.* As a result, Kornegay's legs, right hand, and lower back are "permanently disable[d]." *Id.*

Kornegay told Nurse Hubbard that he had been attacked and showed Nurse Hubbard his broken hand and foot. *Id.* at PageID.7. Kornegay also told Nurse Hubbard that his head hurt, his teeth had been knocked out, and his vision was blurry. *Id.* Although Kornegay asked for emergency medical care outside OCCC, Nurse Hubbard responded by saying "so what" and telling an adult corrections officer to take Kornegay out of the medical unit. *Id.* Approximately thirty days passed before Kornegay was sent to an outside medical facility, where his broken bones and missing teeth were confirmed. *Id.*

Kornegay commenced this lawsuit after signing the Complaint on January 13, 2026. *Id.* at PageID.8. In the Complaint, Kornegay alleges that Sgt. Gilbert, Sgt. Dardeen, and Nurse Hubbard violated his rights by threatening his safety (Count I), using excessive force (Count II), and denying him adequate medical care (Count III). *Id.* at PageID.5–7. Kornegay seeks $3 million in damages, fees, and costs. *Id.* at PageID.8. The Court granted Kornegay in forma pauperis status on March 4, 2026. ECF No. 6.

## II.     STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d

at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### III. DISCUSSION

**A.  Legal Framework for Claims under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original). To state a claim under 42 U.S.C. §1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

**B.  Eleventh Amendment**

Kornegay has named Sgt. Gilbert, Sgt. Dardeen, and Nurse Hubbard in both their official and individual capacities. *See* ECF No. 1 at PageID.1–2.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03

(1984). Thus, the Eleventh Amendment bars any claims for money damages against Defendants in their official capacities, and those claims are therefore DISMISSED with prejudice. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity.").

The Eleventh Amendment does not bar Kornegay's claims for money damages against Defendants in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Before any such claims can proceed, however, Kornegay must resolve the following issues.

**C.     Joinder**

Kornegay's claims appear to arise out of two distinct events: (1) the series of attacks that began in 2022 after he was placed in a general population housing unit and that appear to have some relationship to his gang affiliation (Count I), and (2) Sgt. Dardeen's excessive use of force during an incident in September 2025 (Count II), and the medical care rendered by Nurse Hubbard to Kornegay immediately thereafter (Count III). ECF No. 1 at PageID.5–7.

When a single defendant is named in a lawsuit, a party may bring as many claims as it has against that defendant. Fed. R. Civ. P. 18(a). "To name different defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20,

6

governing joinder of parties." *Weeks v. Espinda*, 2010 WL 2218631, at *3 (D. Haw. June 2, 2010). Rule 20(a)(2) allows multiple defendants to be joined in one action only if (1) any right to relief is asserted against them jointly, severally, or with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2)(A), (B). "Unrelated claims involving different defendants belong in different suits." *What v. Honolulu Police Dep't*, 2014 WL 176610, at *4 (D. Haw. Jan. 13, 2014).

If Kornegay decides to file an amended complaint, he should make clear the connection, if any, between his claim in Count I and his claims in Counts II and III. Kornegay may state several claims against a single defendant. Fed. R. Civ. P. 18. He may also add any additional claims against other defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2). Kornegay may not, however, pursue a combination of unrelated claims in a single suit. *See Char v. Kaiser Hosp.*, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019) ("Unrelated claims involving different defendants must be brought in separate actions."). The fact that Kornegay's claims are all based on events that occurred at OCCC, without more, is not enough to join them in a single lawsuit. *See Woolen v. Ramos*, 2024 WL 3361116, at *4 (D. Haw. July 10, 2024). An attempt to join claims that are not permitted by the Federal

Rules of Civil Procedure will result in those claims being dismissed as improperly joined. In deciding which claim or claims, if any, he wants to pursue in this lawsuit, Kornegay must consider the following legal standards.

**D.     Statute of Limitations**

At one point in Count I, Kornegay states that he experienced attacks in the general population housing unit at OCCC "since 2022." ECF No. 1 at PageID.5. He does not say if these attacks have now stopped, nor does he identify when the last one occurred.

The applicable statute of limitations—that is, the deadline for commencing a lawsuit—for actions brought pursuant to 42 U.S.C. § 1983 is the forum state's limitations period for personal injury actions. *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (per curiam).

In general, the statute of limitations for personal injury actions in Hawaii is two years. *See* Haw. Rev. Stat. § 657-7 (2016); *Bird*, 935 F.3d at 743. Although Hawaii law provides an exception in certain circumstances for causes of action that accrue while a person is imprisoned either on a criminal charge or pursuant to a court sentence, this exception does not apply to actions against, among others, prison officials at OCCC. *See* Haw. Rev. Stat. 657-13(3) (2016); *Conklin v. Espinda*, 2025 WL 294987, at *3 (D. Haw. Jan. 24, 2025).

Federal law determines when a claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017) (per curiam).

**E.     Threat to Safety**

Kornegay alleges in Count I that Sgt. Gilbert threatened his safety by denying his request for protective custody. ECF No. 1 at PageID.5. Kornegay does not say, however, if he was a pretrial detainee or a convicted inmate when these events occurred.

If Kornegay was a pretrial detainee, then his threat-to-safety claim "arise[s] under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (internal quotation marks and citation omitted). To establish a threat-to-safety claim under the Fourteenth Amendment, the plaintiff must show that:

> (1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm; (3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (formatting and footnoted omitted).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks, brackets, and citations omitted). A pretrial detainee who asserts a threat-to-safety claim must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

If Kornegay was already convicted at the time the relevant events occurred, then the Eighth, not Fourteenth, Amendment applies. *See Norbert v. City & County of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) ("For [a plaintiff] who is convicted and awaiting sentencing, the Eighth Amendment supplies the relevant standard."). The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citation omitted). A prison official violates the Eighth Amendment, however, only when two requirements are met. "First, the deprivation must be objectively, sufficiently serious[.]" *Id.* at 834. "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the plaintiff must show deliberate indifference—that is, that "the [prison]

official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

**F.     Excessive Force**

Kornegay alleges in Count II that Sgt. Dardeen used excessive force during an incident in September 2025. ECF No. 1 at PageID.6. Kornegay does not say if he was a pretrial detainee or a convicted inmate at the time of the incident. If Kornegay decides to pursue this claim, in addition to specifying the date of the alleged incident in any amended pleading that he might file, he must also consider the corresponding legal standard that applies to his claim.

If Kornegay was a pretrial detainee, his excessive force claim is analyzed under the Fourteenth Amendment's Due Process Clause. As the Supreme Court has stated, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Under this standard, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. Relevant considerations include the relationship between the need for the use of force and the amount of force used, the extent of plaintiff's injury, any effort made by the officer to temper or limit the amount of force, the severity of the security

problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting. *Id.* at 397.

If Kornegay was a convicted inmate at the time of the incident, his excessive force claim is analyzed under the Eighth Amendment. "In excessive force cases brought under the Eighth Amendment, the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The Ninth Circuit has identified the following five factors to consider when determining whether a use of force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028-29 (9th Cir. 2013) (internal quotation marks and citation omitted).

### G. Medical Care

Kornegay alleges in Count III that Nurse Hubbard denied him adequate medical care immediately after his encounter with Sgt. Dardeen. ECF No. 1 at PageID.6. Again, Kornegay does not say whether he was a pretrial detainee or a convicted inmate when his rights were allegedly violated.

Medical care claims brought by pretrial detainees also arise under the Fourteenth Amendment's Due Process Clause. *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). "[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Id.* at 1124–25.

A pretrial detainee asserting a failure-to-provide-adequate-medical-care claim must show that: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at 1125.

Regarding the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id.* (quotation marks and citation omitted) (alteration in original). The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment"; the

plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation marks and citation omitted).

To establish a claim of inadequate medical care, a convicted prisoner must show both a "serious medical need" and that an official's response to the need was "deliberately indifferent." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785-86 (9th Cir. 2019) (per curiam).

A serious medical need is present when, for example, the "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 785 (internal quotation marks and citations omitted). "Serious medical needs can relate to physical, dental and mental health." *Id.* (internal quotation marks and citations omitted).

"To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* at 786 (internal quotation marks and citations omitted) (alterations in original). This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment." *Edmo*, 935 F.3d at 786 (citation omitted). "In other words,

14

[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* (internal quotation marks and citation omitted) (alteration in original).

## IV. <u>LEAVE TO AMEND</u>

The Complaint, ECF No. 1, is DISMISSED with partial leave to amend. Kornegay must file any amended pleading on or before **April 10, 2026**. Kornegay may not expand his claims beyond those already alleged herein or add new claims without explaining how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Kornegay must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form. *See* LR99.2(a). An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

## V.  28 U.S.C. § 1915(g)

If Kornegay fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. §1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

(1) The Court DISMISSES with prejudice all claims for money damages against Defendants in their official capacities.  These may not be reasserted.

(2) If Kornegay wants any of his claims for money damages against Defendants in their personal capacities to proceed, he must file an amended pleading that cures the noted deficiencies in those claims on or before **April 10, 2026.**

(3) ALTERNATIVELY, instead of filing an amended pleading, Kornegay may inform the Court in writing on or before **April 10, 2026** that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure

41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

(4) Failure to comply with these deadlines may result in AUTOMATIC DISMISSAL of this suit without further notice, and Kornegay may incur a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Kornegay a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: March 10, 2026 at Honolulu, Hawaiʻi.



/s/ Derrick K. Watson
_____
Derrick K. Watson
Chief United States District Judge

_____

*Anthony Trevon Kornegay v. Stg. Srgt. Christopher Gilbert, et al.*; Civil No. 26-00058 DKW-RT; **ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND**

17